<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOCELYN POLANCO, ON BEHALF OF J.H., A MINOR CHILD, | Civil Action No. 15-04322 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Jocelyn Polanco ("Plaintiff"), on behalf of J.H., a minor child (the "Child" or "Claimant") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Donna A. Krappa denying Plaintiff's application for child's Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.l(f). The Court has reviewed the parties' submissions. For the following reasons, the Court affirms the ALJ's decision.

### I. BACKGROUND[1]

The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 6.

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make

2

conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992).  It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).  Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

A child's eligibility for disability benefits is governed by 20 C.F.R. § 416.924.  these regulations "require a three-step analysis to determine whether a child is disabled: (1) that the child is not working; (2) that the child had a 'severe' impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings." *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 F. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924(a)).

The ALJ engaged in the above three-step evaluation and found: (Step 1) that Claimant is not gainfully employed (R. at 17); (Step 2) that Claimant suffers from the "severe impairments" of phenylketonuria ("PKU") and asthma (*id.*); and (Step 3) that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that the Claimant "does not have an impairment or combination of impairments that functionally equals the severity of the

listings." (*id.*). For these reasons, the ALJ found the Child not to be disabled. (*Id.*) Plaintiff challenges the ALJ's step three findings. (*See* Pl.'s Br. at 5-14.)

### III.   DISCUSSION

Prior to addressing Plaintiff's specific arguments, the Court notes that Plaintiff's brief fails to comply with Local Civil Rule 9.1. It contains no meaningful statement of the issues for review (*see* L. Civ. R. 9.1(e)(5)(A))[2] and no statement of facts (separate from the procedural history) (*see id.* 9.1(e)(5)(B),(C)). Although Plaintiff has not complied with this Court's Local Rules outlining very specific requirements for briefing of social security matters, to avoid additional delay for re-briefing, and to not punish the Plaintiff for the errors of her counsel, the Court will consider Plaintiff's deficient brief as-is.

Plaintiff argues that "at step three and throughout the decision, PKU is not analyzed medically, in comparison with any listing or in conjunction with asthma." (Pl.'s Br. at 13.) Specifically, Plaintiff argues that the ALJ issued a conclusory finding that the Child does not meet three sections of the medical listings and that the ALJ erred in not considering other applicable listings. (*Id.* at 12-14). Further, Plaintiff accuses the ALJ of not considering the Claimant's impairments in combination and by failing to call a medical expert to testify as to the Child's condition. Finally, Plaintiff maintains that the ALJ erred in finding no "marked limitation" in either the "attending and completing tasks" or "health and physical well-being" domains. (*Id.* at 14-16).

---

[2] Rather, the brief contains a heading entitled "Issue," which merely recites the standard of review that the District Court is to apply to an ALJ's determination: "The primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence." (Pl's. Mov. Br. at 2). Needless to say, such a general statement of the "Issues" does not comport with the Local Civil Rule's requirement that a Plaintiff provide "a statement of the issues presented for review."

Before addressing these specific arguments, the Court notes that, in *Jones*, the Third Circuit made clear that *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis," so long as the ALJ provides sufficient analysis "to permit meaningful review." 364 F.3d at 505; *see also Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient.").

At step three, the ALJ is required to determine whether a child's "impairment, or combination of impairments, [is] of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings." *T.C. ex rel. Z.C.*, 497 F. App'x at 160. With respect to the medical equivalence analysis, the Commissioner's regulations provide:

> We will decide that your impairment(s) is medically equivalent to a listed impairment in appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairment to determine whether the combination of your impairments is medically equal to any listed impairment.

*Burnett*, 220 F.3d at 120, n.2 (citing 20 C.F.R. § 404.1526 (1999)).

5

Here, the ALJ found that the Child "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 17). Specifically, the ALJ noted that she considered sections 103.02 ("chronic pulmonary insufficiency"), 103.03 ("asthma"), and 105.08 ("growth failure due to digestive disorder"), but found that "the evidence is not compatible with the requirements of these sections." (R. 18).

Plaintiff argues that with respect to the ALJ's consideration of section 103.03 (asthma), "[n]o comparison is made between the elements of the listing, its four paragraphs and the evidence." (Pl.'s Br. at 12). To meet the asthma listing, the Claimant must demonstrate the following symptoms: (1) "FEV1 equal to or less than the value specified in table I of 103.02A" or (2) asthma attacks or (3) "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators" (with additional qualifications) or (4) growth impairment. 20 C.F.R., pt. 404, subpart P., app. 1, §103.03.

Defendant maintains that "there is simply no evidence in the record (and Plaintiff does not point to any) demonstrating that [the Child] met or could possibly meet any of these requirements." (Def.'s Br. at 15). The Court agrees.

At the outset, the ALJ acknowledged that she "has considered all of the relevant evidence in the case record," including medical reports, statements from the Child's family members and teachers, and the testimony of both the Child and Plaintiff at the hearing. (R. 18). The ALJ noted that the Child has asthma, but that the condition is controlled by prescription medication. (R. 19). Moreover, the ALJ found that with the exception of one emergency room visit in 2011, "there is no evidence of asthmatic exacerbations." (R. 19). Plaintiff has not directed the Court to any evidence that the ALJ overlooked with respect to the Child's asthmatic condition. Accordingly,

the Court finds that the ALJ's determination that the Claimant does not medically equal the asthma

listing is supported by substantial evidence.

Additionally, Plaintiff appears to argue that the ALJ's consideration of sections 103.02 and

105.08 was done in vain because those sections are not relevant to the Child's conditions.  (Pl.'s

Br. at 12-13).  However, even assuming these sections are inapplicable, the ALJ's over-inclusive

consideration of same would hardly amount to reversible error.  Plaintiff further contends that the

ALJ failed to consider the Claimant's "metabolic disorder . . . under paragraph 109.00 nor [ ] his

congenital abnormality [ ] under 110.08 or his seizures under 111.00."  (*Id.* at 13).

Having reviewed the medical listings cited by Plaintiff, the Court struggles to see how any

of these sections are relevant to the Child's situation.  Specifically, section 109.00 applies to

endocrine disorders rather than "metabolic disorder[s]" as represented by Plaintiff, yet Plaintiff

has not indicated that the Child suffers from any endocrine disorder.  Second, section 110.08

applies to "catastrophic congenital disorders" which are disorders that often are expected to result

in a child's early death or otherwise "interfere very seriously with development."  The ALJ's

discussion of the relevant evidence supports a finding that the Child does not suffer such a

catastrophic congenital disorder.  Indeed, medical records reviewed by the ALJ indicated that the

Claimant is well-nourished, well-developed, and within normal weight and high percentile ranges.

(R. 19).  The Child's school records demonstrate that he was promoted to the fourth grade and that

he maintains a B grade average.  (R. 20).  Finally, Plaintiff has not cited any evidence in support

of her suggestion that the Child suffers from seizures.

In light of the above, even assuming that the ALJ erred in not considering any of Plaintiff's

proposed medical listings, such error would have been harmless.  *See Shinseki v. Sanders*, 556

U.S. 396, 410 (2009) ("Often the circumstances of the case will make clear to the appellate judge

that the ruling, if erroneous, was harmful and nothing further need be said.  But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm.").

In addition to alleging errors with respect to the ALJ's comparison of the Child's individual conditions with relevant listings, Plaintiff argues that the ALJ failed to consider the Child's PKU and asthma in combination.  (Pl.'s Br. at 13).

Here, the ALJ unequivocally stated that the Child "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  (R. 17).  In light of the ALJ's thorough discussion of the record throughout her opinion, the Court finds that the ALJ adequately considered the combined effect of the Child's impairments.  *See Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir.2004) (holding that the ALJ's step three determination was adequate because the ALJ's decision, "read as a whole," illustrated that the ALJ considered the appropriate factors).  Moreover, the Court notes that Plaintiff has not "point [ed] to any medical evidence ignored by the ALJ that would show that [Plaintiff's] impairments medically equaled one of the listings."  *See Cosby v. Comm'r of Soc. Sec.,* 231 F. App'x 140, 146 (3d Cir.2007) (noting that this shortcoming is significant).  Therefore, the Court concludes that the ALJ properly considered the combined effect of Plaintiff's impairments at step three.

Plaintiff maintains that the ALJ erred in failing to illicit the testimony of a medical expert with regards to the Child's medical and functional equivalence because "[t]he disease [of PKU] and its ramifications require a medical analysis which neither [P]laintiff nor the ALJ are competent to perform."  (Pl.'s Br. at 13).  Plaintiff cites to 20 C.F.R. § 416.927(e)(2)(iii)[3] in support this position.  However, this regulation does not require an ALJ to hear testimony from a medical expert, and only provides that an ALJ "*may* also ask for and consider opinions from medical

---

[3] Plaintiff cites to the outdated 20 C.F.R. §416.927(f)(2)(iii); however, this section has been redesignated as subsection (e).

experts on the nature and severity of [the Child's] impairments." *Id.* (emphasis added). Plaintiff argues that this regulation "must certainly be seen as encouraging [expert medical testimony] as such testimony an instance, such as here, where the ALJ frankly admits a complete novelty of the child's disorder in her seven years on the bench." (Pl.'s Br. at 8). However, given this Court's findings that the ALJ adequately considered the entire record before her in issuing her opinion and the Plaintiff's failure to point to any evidence that the ALJ did not consider, the ALJ's decision to not call a medical expert does not amount to reversible error.

Lastly, Plaintiff argues that the ALJ's analysis of the Child's functional equivalence to a listed impairment is not based on substantial evidence. (Pl.'s Br. at 14-16). With respect to determining functional equivalence, the Third Circuit has summarized the regulations as follows:

> The regulations provide that functional equivalence to the severity of an impairment in the Listings may be determined based on domains of functioning. 20 C.F.R. § 416.926a. A medically determinable impairment or combination of impairments functionally equals a listed impairment if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a). A child's functional limitations are considered in terms of six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id.* § 416.926a(b)(1). A limitation is "marked" when it "interferes seriously with your ability to independently initiate, sustain, or complete activities" and marked means "more than moderate but less than extreme." *Id.* § 416.926a(e)(2)(i).

*T.C. ex rel. Z.C.*, 497 F. App'x 158 at 160-61.

Here, the ALJ found that the Child "has a less than marked limitation" in the following domains: (1) "acquiring and using information"; (2) "attending and completing tasks," and; (3) "health and physical well-being." (R. 14). With respect to the remaining three domains, the ALJ found "no limitation." (*Id.*). The ALJ explained that she "evaluated the 'whole child' in making findings regarding functional equivalence," pursuant to SSR 09-1p. (*Id.* at 18). The ALJ "also

assessed the interactive and cumulative effects of all of the [C]laimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected domains." (*Id.*).

Plaintiff disagrees with the ALJ's finding of a "less than marked limitation" in the domains of attending and completing tasks and health and physical well-being. (*Id.*). Specifically, Plaintiff argues that the ALJ failed to consider the Child's inclination to fall asleep during the day in connection with the attending and completing tasks domain. (*Id.* at 15). Plaintiff further argues that the ALJ issued a conclusory finding with regards to the health and well-being domain that does not account for the Child's "bone pain, frequent fevers and absences" or insomnia. (*Id.* at 16).

As discussed above, the Court has found that the ALJ adequately considered the entire record before her in issuing her opinion. The ALJ was cognizant of the Child's tendencies to fall asleep at school and experience fevers with accompanying achy bones. (R. 19). Therefore, although the ALJ did not explicitly mention these facts in her analysis of these two domains, it is clear to the Court that the ALJ was aware of the Child's symptoms and that her ultimate determination is, in any event, substantiated by the record.

## IV.    CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

JOSE L. LINARES
U.S.D.J.   8/15/16